Marshall, C. J.
 

 Sections 2365-1 and 2365-2, General Code, require that the surety bond shall contain “an additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials furnished in the construction, erection, alteration or repair of such building, works or improvements.” The condition in the bond fully complies with the statutory requirement. The bank loaned money in good faith to the contractor upon a pledge of the amount due and to become due under the contract, and the money was used by the contractor in paying for labor; and materials which entered into the contract. Upon these facts it must be determined whether the bank is entitled to priority of payment of its claim of $800 and interest.
 

 It is the claim of the surety that it stands in the position of the state, and that it is subrogated to all rights which the state would have had if the state had forfeited the contract and proceeded to complete the work. The surety further contends that the contractor could not make a valid assignment of the funds to the bank as collateral security for a loan, even though the money so loaned was used to pay claims which the surety would otherwise have been compelled to pay under the law and its contract and its bond, if the effect of such
 
 *327
 
 deprives the surety of its right to stand in the position of- the state.
 

 This question has never heretofore been before this court. It is claimed that the case of
 
 Amick
 
 v.
 
 Woodworth,
 
 58 Ohio St., 86, 50 N. E., 437, sustains the contention of the bank, but that case is wholly dissimilar, and, when carefully examined, does not support the contentions of the bank in the instant case. The case of
 
 Caraway
 
 v.
 
 Robinson,
 
 85 Ohio St., 485, 98 N. E., 1121, involved. the principle of offset between a creditor of a decedent estate and a debt claimed by the estate, and is also without value. The only other Ohio Supreme Court case cited by the bank is that of
 
 W. E. Wright Co.
 
 v.
 
 Ear shall,
 
 101 Ohio St., 517, 130 N. E., 942. That case does declare that the doctrine of subrogation will not be applied to prefer one creditor over another, where an inequitable result will be accomplished thereby. In the instant case it must be apparent that the equities are equal. In that case the laborers and materialmen had perfected liens prior to the forfeiture, as they had a right to do in cases of contracts by municipalities, and in addition to that fact, the laborers and material-men were entitled to. be paid by the surety. The difference between that case and the instant. case is that the bank was not a laborer or materialman, but merely a volunteer lender of money. In the absence of any direct authority among the former decisions of this court, we must turn to the Supreme Court of the United States and the courts of last resort of the states.
 

 The case of
 
 Prairie State Bank
 
 v.
 
 United States,
 
 164 U. S., 227, 17 S. Ct., 142, 41 L. Ed., 412, clearly
 
 *328
 
 states the right of the surety to subrogation, and that case differs from the instant case only in the fact that the surety was not liable in that case to pay the claims of laborers and materialmen. The Supreme Court of the United States reaffirmed this doctrine upon similar facts in the case of
 
 Henningsen
 
 v.
 
 United States Fidelity & Guaranty Co.,
 
 208 U. S., 404, 28 S. Ct., 389, 52 L. Ed., 547.
 

 Other cases more directly in point, because the surety for the contractor in those cases was obliged either by statute or by the contract to pay the claims of laborers and materialmen, are as follows:
 
 People’s National Bank
 
 v.
 
 Corse,
 
 133 Tenn., 720, 182 S. W., 917;
 
 First Nat. Bank of Seattle
 
 v.
 
 City Trust, Safe Deposit & Surety Co.,
 
 52 C. C. A., 313, 114 F., 529;
 
 Am. Bonding Co.
 
 v.
 
 Central Trust Co.,
 
 153 C. C. A., 326, 240 F., 400;
 
 Wasco County
 
 v.
 
 New Eng. Equit. Ins. Co.,
 
 88 Or., 465, 172 P., 126, L. R. A., 1918D, 732, Ann. Cas., 1918E, 656;
 
 Derby
 
 v.
 
 United States Fid. & Guaranty Co.,
 
 87 Or., 34, 169 P., 500;
 
 First Nat. Bank
 
 v.
 
 Pesha,
 
 99 Neb., 785, 157 N. W., 924;
 
 Neodesha Nat. Bank
 
 v.
 
 Russell,
 
 109 Kan., 562, 200 P., 281;
 
 Massachusetts Bonding & Ins. Co.
 
 v.
 
 Ripley County Bank,
 
 208 Mo. App., 560, 237 S. W., 182.
 

 The foregoing cases declare that the surety is subrogated, to the extent necessary to protect it from loss, to all the rights which the state might have asserted by virtue of Section 1209, General Code, against the funds in its hands, and that such right attaches at the time the contract is made, and is one of the valuable rights which accrue to the surety by reason of its obligation of suretyship, and is not defeated by an assignment of the fund
 
 *329
 
 to secure a loan of money by a bank. They further establish the principle that, by reason of the assignment of the moneys due and to become due to the contractor from the state, the assignee of the contractor took no greater rights than the contractor himself might have asserted against the state.
 

 Other cases declare that a bank in loaning money to a contractor is under no obligation to do so, and is therefore to be treated as a volunteer, and for that additional reason acquires no right by assignment superior to the right of the contractor himself.
 
 Hemmingsen
 
 v.
 
 U. S. Fidelity & G. Co., supra; Lion Bonding & Surety Co.
 
 v.
 
 First State Bank of Paris,
 
 (Tex. Civ. App.), 194 S. W., 1012;
 
 Carr Hardware Co.
 
 v.
 
 Chicago Bonding & S. Co.,
 
 190 Iowa, 1320, 181 N. W., 680;
 
 Hess & Skinner Engineering Co.
 
 v.
 
 Turney,
 
 110 Tex., 148, 216 S. W., 621;
 
 American Bonding Co.
 
 v.
 
 Central Trust Co., supra.
 

 It is also declared in the case of
 
 Derby
 
 v.
 
 U. S. Fidelity Co.,
 
 87 Or., 34, 169 P., 500, that the fact of suretyship upon the bond of the contractor is notice to a bank or other lender of the surety’s right of subrogation.
 

 The case of
 
 Hardaway
 
 v.
 
 National Surety Co.,
 
 211 IT. S., 552, 29 S. Ct., 202, 53 L. Ed., 321, was an appeal from a decree of the Circuit Court of Appeals of the Sixth Judicial District, and the opinion was delivered by Mr. Justice Day. The facts of that case, while not parallel to the facts of the instant case, were, nevertheless, such that the same legal principles are necessarily applicable. A contract had been entered into for a public im
 
 *330
 
 provement between the United States and Willard & Cornwell. Thereafter Willard & Cornwell entered into a contract with Hardaway & Prowell for the completion of the work, and the Supreme Court of the United States construed that contract as follows:
 

 “Hardaway and Prowell bound themselves to furnish superintendence and to furnish the money to complete the work which Coyne had undertaken to do. These things were all that Hardaway and Prowell undertook to do; they were not subcontractors in our view who undertake to furnish labor and materials upon a contract with the original contractor. The extent of the agreement was to furnish funds to complete the work and to superintend it. For this they were to be paid by the assignment of the reserve funds in the hands of the Government and the checks or payments under the original contract. There was no undertaking on the part of the surety company that the contract should be profitable to its principal or to any other substituted in the contract by assignment or otherwise. The surety did agree by the terms of the bond that the original contractors should make full payment to all persons supplying them with labor and materials in the prosecution of the work.”
 

 Upon these facts the Supreme Court held that the surety company was not obligated to pay for labor and materials supplied by Hardaway & Prowell in the completion of the work.
 

 All the foregoing cases quite clearly and uniformly support the claims of the surety in the instant case. As against this long line of authorities we are cited by counsel for the bank to the case of
 
 *331
 

 Puget Sound State Bank
 
 v.
 
 Gallucci,
 
 82 Wash., 445, 144 P., 698, Ann. Cas., 1916A, 767, but a careful examination of that case discloses that it was decided upon the peculiar language of the statute governing such matters in force at that time in the state of Washington. By virtue of that statute, and more especially by virtue of the contract made pursuant to that statute, the surety became obligated, not only to pay the claims of laborers and materialmen, but to pay “all just debts, dues, and demands incurred in the performance of said work.” Whatever force that case might have had as an authority in the instant case, much of that force was destroyed by the fact that at a subsequent date the Legislature of the state of Washington amended the law, leaving out the words above quoted, thereby indicating that it was not the intention of the. Legislature, in the declaration of a sound public policy for that state, to destroy the rights of sureties to subrogation upon public contracts in that state.
 

 Another case cited by counsel for the bank is that of
 
 Fidelity & Deposit Co. of Maryland
 
 v.
 
 City of Stafford,
 
 93 Kan., 539, 144 P., 852. In that case the Supreme Court of Kansas permitted a bank, under circumstances . quite similar to the facts of the instant case, to prorate with the surety company in the funds remaining in the city treasury, but in the opinion the court cites with approval the case of
 
 Prairie State Bank
 
 v.
 
 United States, supra,
 
 and
 
 First National Bank of Seattle
 
 v.
 
 City Trust Co., supra,
 
 and, notwithstanding that court’s approval of those authorities, permitted the bank and the surety to prorate. It was stated by the court in the opinion that the case was de
 
 *332
 
 cided upon its own peculiar facts, and it is apparently not of much value in support of the bank’s contentions in the instant case. Whatever may be said about the Washington and Kansas authorities, they are certainly in a hopeless minority, and the larger number of cases which support the contentions of the surety state the sounder doctrine.
 

 It is urged on behalf of the bank that by reason of its assignment of the contract it becomes entitled to all the security of the contract. Even if this should be admitted, it adds no strength to the position of the bank. Conceding that the bank by the assignment had transferred to it all the value of the contract, it turns out in this particular case that the contract had no value. Whether of not a contract has value depends upon whether the contractor made a good bid. If the contract can be executed at a profit, it has value. If it is executed at a loss, it becomes a liability. And this is perhaps the best answer to the contentions of the bank—that it had transferred to it what turned out to be a liability instead of an asset.
 

 It may clearly be deduced from all the foregoing authorities, and it must further be resolved upon principle, that the right of subrogation in the surety operates as an equitable assignment, and that, inasmuch as the surety is a party to the original contract, such equitable assignment takes priority over any assignment, legal or equitable, which may be given by the contractor to any third party who enters the transaction after its inception.
 

 It has further been urged on behalf of the bank that it is entitled to be subrogated, and therefore
 
 *333
 
 entitled to claim an equitable assignment of the claims of laborers and materialmen who were paid by the funds loaned by the bank to the contractor. This question was fully met in the case of
 
 Illinois Surety Co.
 
 v.
 
 City of Galion,
 
 (D. C.), 211 F., 161, where the court determined to the contrary. Laborers and materialmen who were paid by the money loaned by the bank to the contractor had no liens and the bank cannot therefore be said to have acquired existing and vested liens. We therefore hold upon principle, as well as authority, that the surety company must prevail.
 

 Judgment for relator.
 

 Matthias, Allen and Robinson, JJ., concur.