## MIAMI CONSERVANCY DIST. v. NEW AMSTERDAM CASUALTY CO.

### No. 8506.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1941.

Andrew U. Thomas, of Dayton, Ohio (O. B. Brown, Andrew U. Thomas, and Frank & Thomas, all of Dayton, Ohio, on the brief), for appellant.

Byron B. Harlan, of Dayton, Ohio (Byron B. Harlan, Thomas E. Marshall, and Marshall, Harlan & Marshall, all of Dayton, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The Casualty Company was surety on a contractor's bond given to the Conservancy District to secure faithful performance of a public improvement contract. It was held liable by decision of the Butler County Court of Appeals (New Amsterdam Casualty Co. v. A. Wirtz Transfer Co., 34 N.E.2d 258, for the claims of laborers, materialmen and subcontractors remaining unpaid after the District had paid the contractor the full amount of the contract price. It sought to recoup its loss by suit against the District on the ground that the

retained percentages were for its benefit and were turned over to the contractor in breach of promissory obligations imposed upon the District by the terms of the bond. From a judgment for the surety, the District appeals.

There is no factual controversy, and the court adopted as its findings the agreed statement of facts. The Conservancy District is a political subdivision and body corporate, created and existing by virtue of § 6828-1 et seq. of Ohio G.C. It contracted for the removal of excess material from the channel of the Miami River with the Ward-Hayes Construction Company, the successful bidder for the work. In accordance with the terms of the contract, the Construction Company, as principal, and the appellee as surety, executed a statutory bond to the District, which was duly approved. The contractor proceeded with the work completing the excavation on January 11, 1933, though cleaning up and seeding was not finished 'till March 25. On that date the work was accepted by the chief engineer of the District who certified to its Board of Directors the amount of the final payment due the contractor. There was then due to the Construction Company the sum of $19,943.57, and upon its release of the District from any and all claims for work and materials or sublet contracts, and of any other claims of whatever nature arising out of the agreement, and upon its written representation in such release that all bills and claims of every kind growing out of the work had been paid and satisfied in full, the final payment was made to it. The check of the Conservancy District was deposited by the contractor in its account with the First National Bank of Hamilton, Ohio, but its deposit balance was immediately applied by the bank on the contractor's indebtedness to it, and as a result, checks issued against the deposit to laborers and materialmen were dishonored.

A number of suits were thereupon brought against the surety on its bond in the Court of Common Pleas of Butler County by laborers and materialmen. There they were consolidated for trial and resulted in judgments against the surety in a sum upwards of $13,000, affirmed by the Court of Appeals in the case cited. The surety notified the District of the pendency of the suits, but the District did not respond. Following affirmance of the judgments and their satisfaction, the surety demanded reimbursement from the District, and upon its denial of liability brought the present action.

The construction contract required the contractor, at its own sole cost and expense, to perform all the labor and services and to furnish all the necessary materials, plant and equipment for its performance, and the contractor agreed therein to save the District harmless from all claims against it for material furnished or work done, and if requested, to furnish the Board of the District with evidence, in its opinion satisfactory, that all claims for work and material had been met. The District had the right at all times to reserve and retain 20% of the amounts due the contractor, and the provision for final payment was as follows:

"On or before the expiration of 30 days after date of acceptance of the work by the Board, the District shall pay to the Contractor the amount due him on the final estimate. Provided, however, that before he shall be entitled to payment of such amount, the Contractor shall execute and file with the Board, a release, in proper form, of all claims against the District on account of this Contract."

The bond executed by the surety refers to the contract and recites that it is executed upon express conditions, each of which is a condition precedent to any right of recovery thereon. The condition that is important to the present controversy, is in terms as follows: "Fourth. That the Obligee shall faithfully perform all of the terms, covenants and conditions of said contract on the part of the Obligee to be performed; and shall also retain that proportion, if any, which said contract specifies the Obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of said contract (not less, however, in any event, than ten percentum of such value), until the complete performance by the Principal of all the terms, covenants and conditions of said contract on the Principal's part to be performed and until the expiration of the time within which liens or notices of liens may be filed, and until the discharge of such liens, if any; and the Obligee shall at all times observe and conform to the laws relating to liens of the State wherein said contract is to be performed."

It is the contention of the surety that the provisions of the bond, though denominated conditions, are affirmative covenants or promises on the part of the District, and that their violation entitles it to judgment

for damages. It is further its contention that the bond being statutory is incorporated in the contract, and that since the contract is incorporated in the bond by express reference, the two instruments must be read together, and that as so read the proviso in the fourth paragraph of the bond imposes a specific obligation upon the District to retain the final payment for 30 days and until the time has run within which notice of lien must be given, under Ohio law. It is further the contention of the surety that since the Court of Appeals has held the "Sixth" condition of the bond limiting right of action thereon to and for the use or benefit of the obligee alone, contrary to public policy and void, that the bond protected not only the obligee, the contractor's subcontractors, laborers and materialmen against the contractor's default, but likewise the surety. The District Court approved this contention and concluded that since the bond did not run to the Conservancy District alone, and was not intended for its sole use and benefit, the so-called conditions became and were promissory obligations of the District to the surety. The court also found that the requirement of the contract conditioning final payment upon a release of the District from all claims, was not complied with, since the release was merely by the contractor and not by others who might have some claim to the retained fund.

It must be observed, however, that the contract was between the District and the Construction Company, and not between the District and the surety. It obligated the District to pay for the work on or before 30 days after its acceptance upon the execution of a release of all claims against it. It is true that it authorizes the District to retain monies due the contractor until the District is satisfied that all liabilities have been discharged. This provision is permissive, however, and not obligatory, in its phrasing, and the judgment to be exercised as to evidence of the discharge of liabilities being satisfactory, is the judgment of the District, and if exercised in good faith and without notice, actual or constructive, of outstanding claims, it may not, we think, be challenged.

The "Fourth" clause of the bond does, however, undertake to require retention of final payment "until the expiration of the time within which liens or notices of liens may be filed." Were we to view it as a promissory obligation of the District it would require consideration of § 8324 of the Ohio G.C., which is as follows: "Any subcontractor, material man, laborer or mechanic, who has performed labor or furnished material, fuel, or machinery, * * * for the construction, improvement or repair of any turnpike, road improvement, sewer, street or other public improvement, or public building provided for in a contract between * * * any board, officer or public authority and a principal contractor, and under a contract between said sub-contractor, material man, laborer or mechanic and a principal contractor or sub-contractor, * * * at any time, not to exceed four months from the performance of the labor or the delivery of the machinery, fuel or material, may file with the owner, board or officer, or the authorized clerk or agent thereof, a sworn and itemized statement of the amount and value of such labor performed * * * material, fuel or machinery furnished."

Section 8325, while not invoked, requires that the public authority shall, upon receiving such notice as is authorized under § 8324, detain all subsequent payments. Whether the notice permitted under § 8324 or the requirement of § 8325 authorize a lien to be acquired by a subcontractor, materialman or laborer on a public improvement, we have no need to decide. It has been thought that these sections contain no lien provisions (In re Schilling, D.C. Ohio, 251 F. 966, 971), although some of the Ohio cases refer to them as though they provided for a lien. No adjudication has, however, been called to our attention construing these provisions as permitting a lien. The subcontractors, materialmen and laborers, however, who recovered judgment against the surety, served no notice upon the District as authorized by § 8324, and sought no payment from it. It has been expressly held in Village of Beachwood v. Ohio Casualty Co., 47 Ohio App. 212, 191 N.E. 797, that the rights of a surety in such circumstances can rise no higher than the rights of materialmen, and that inasmuch as no steps were taken to perfect any lien against the public authority, or against the retained percentage of the contract price before it was paid out, it follows that the surety may not recover by virtue of any lien rights created by the statute, and so becomes unnecessary to decide whether a lien could be created. In any event, it is doubtful that a public body whose contractual powers are limited, may be made liable as to private parties in relations quasi ex contractu.

The District Court supported its judgment also upon the theory that a trust relationship existed between the District and the surety. It is undoubtedly the general rule, as it is the rule of Ohio, that the surety upon a construction contract for public work may have recourse to the fund held by the owner upon the principle of subrogation, either to the rights of the claimants or the rights of the owner. Farmers Bank v. Hayes, 6 Cir., 58 F.2d 34; State of Ohio ex rel. So. Surety Co. v. Schlesinger, 114 Ohio St. 323, 151 N.E. 177, 45 A.L.R. 371. Assuming, though not deciding, that the retained percentages constitute a trust fund, the District was obligated to make final payment in accordance with the contract upon assurances satisfactory to it that all persons claiming any right to the fund had been paid. The release provision of the contract is an obligation of the contractor alone, is in the singular, and contains no indication that releases were to be furnished from every laborer, subcontractor, and materialman who made any contribution to the work. There is nothing in the agreed statement of facts from which inference may be drawn that the District Board acted in bad faith, or with knowledge, either actual or constructive, of the existence of unpaid claims. There was no breach of trust.

Reversed and remanded for new trial in conformity herewith.