TOWN OF RIVER JUNCTION, FLA., et al.
v. MARYLAND CASUALTY CO.

No. 10368.

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1943.

Rehearing Denied March 12, 1943.

Millard F. Caldwell, B. A. Meginniss, and Julius F. Parker, all of Tallahassee, Fla., and H. M. Taylor, of Quincy, Fla., for appellants.

Francis M. Holt, Sam R. Marks, and Harry T. Gray, all of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

This case was reversed for further proceedings in Town of River Junction v. Maryland Casualty Co., 5 Cir., 110 F.2d 278, 134 A.L.R. 727, where its nature is fully set forth. Thereafter the portions of the answers erroneously stricken were reinstated, and pursuant to an order of the court the Town of River Junction and Gadsden County State Bank each filed similar bills of particulars as to the disbursement of the money loaned by the bank to the contractor, upon the assignment of the June, 1937, check due him by the town, tending to show their application to claims for which Maryland Casualty Company, as the contractor's surety, was bound; and averring that the money was loaned for and intended to be applied only to such claims. Certain facts were admitted, and on a pretrial conference the court held there were two issues to be tried: (a) Whether the contractor was in a state of default under his contract when the bank loaned $4,000 on June 28, 1937, and took its assignment of the June check, by reason of not having paid by June 20, 90 percent of the cost of all materials, tools, and expendible equipment delivered to the project prior to the month of June; the burden being on the town and bank to show no default. (b) Whether the proceeds of this loan of $4,000, and those of $400 and $400 made in July also on the faith of the assignment, were actually used to pay claims for which the surety would have been liable; the burden being upon town and bank to show such use. Evidence was taken and the court found against the town and bank on both issues, and decreed that the surety recover from the town and bank $5,105.77 which the town had paid to the bank pursuant to the assignment. This appeal followed.

■ The court properly defined the fact issues to be tried. It properly placed the burden of proof as to each. In so far as the bank and town relied on the assignment to justify the payment to the bank of the $5,105.77 they had to sustain its validity. In this case the contractor under his contract was not entitled to any June check unless he had paid off 90 percent of the cost of all material, tools, and expendible equipment delivered to the project in the preceding months. The right he was assigning was not a negotiable right, and the assignee could acquire no better right than the assignor had, no matter what his belief or good faith may have been. The burden of showing the state of the contractor's accounts is hard for others to carry, the contractor having failed and his books having disappeared, but it is an essential part of establishing the assignment. So also, the assignment failing, the burden of showing an equity arising from the application of the money is on the town and bank who assert it.

■ As to issue (a) the evidence is not clear as to what the cost of material, tools, and equipment delivered to the project before June was, and what percent of it remained unpaid. It is plain that relatively little was furnished in June and afterwards, but that some $8,000 of material bills were outstanding and had to be paid by the surety when it took over the work in August. The entire sum to be paid for the work was about $82,000, and only a fraction of that would be material, tools, and expendible equipment. The probabilities are all in favor of more than ten percent having been unpaid before June. Wherever the burden be placed, the conclusion under the evidence ought to be that the contractor had not performed this condition precedent to his collecting further progress payments. His certificate to the town that he had paid in full, made on June 2 to the town to get the May check, does not estop the surety, seeing that the town did not act on it in paying to the bank the money now in controversy. Besides, if that certificate was binding on the surety, it covered only April costs and did not mean that the May

check, not yet received, had been duly applied. The assignment of the June check has thus not been shown to be valid.

We think the decision of issue (b) is in part clearly erroneous. Although the assignment of the June check be void in law, it operates to prevent the bank from being a mere volunteer or intermeddler and entitled to no consideration in equity. When a person, though having no interest to protect, is induced to lend money for the very purpose of removing a charge or incumbrance, taking security believed to be good against the thing incumbered, which security proves ineffectual, but the loaned money is actually used to remove the charge or incumbrance, equity as against persons benefitted will subrogate the lender to the charge or incumbrance so removed. The lender is not a volunteer but a victim. This of course is not conventional subrogation, nor the usual equitable subrogation in which equity aids one who was bound and has paid for his own protection, but it is an instance in which equity uses subrogation to accomplish that which is plainly just and right. Not all courts have applied it as stated above, but the Florida court has. Brannon v. Hills, 111 Fla. 491, 149 So. 556. We apply it here. The surety was bound to see that all labor and material claims were paid, and to carry the job to completion. The claims of laborers and materialmen were a charge or incumbrance on the money due the contractor by the town, and against the surety's own bond. The contractor, embarrassed by delays in paying monthly estimates, and as now appears, by a probable loss in the job, went to the bank to get cash to carry on instead of going to the surety. The bank refused to make general loans, but did make these advances to be used solely to pay labor and materials, and on the security of a payment believed to be due. The money was used in the main for the purposes intended, but the security has failed. The surety has gotten its obligations discharged by the money furnished by the bank, with the cooperation of the town. The surety has no moral or equitable right to have the bank pay back or the town to pay again. The surety has chosen an equitable forum. In the original complaint, he asserts his claim against the bank for the $5,105.77 paid it by the town thus: "that in equity and good conscience the said Gadsden County State Bank now holds said sum of money in trust for the benefit of your orator." We think equity

and good conscience entirely the other way. Whether or not the bank could actively enforce a subrogation against the surety of the claims its money paid, it can at least prevent a recovery in equity by the surety.

As to the use made of the borrowed money, the original checks are available, and the memory of those who used them. One check for $2,556.01 went to a subcontractor who admittedly the surety would otherwise have had to pay. Several other checks payable to Henry L. Wheeler or to cash and indorsed by Wheeler, are proven by him to have been for cash for payrolls, and some small freight charges, for all of which the surety would have been liable. Since the contractor's failure, the surety audited Wheeler's transactions and paid him $20 advanced by him, showing content with his handling of funds. These checks aggregated $1,871.48. Another check, $22.-80, went to a subcontractor. These, totalling $4,450.29, clearly were used to relieve the surety. Three checks, amounting to $178.80, were to H. D. Driscoll for salary. He was the contractor's president, and also worked on the job. The surety was not liable for an executive's salary, and the evidence does not show any separate service for which the surety would be liable to him, so these checks are not shown to have relieved the surety. Some other checks were sent to repay advances made by another job; as to which no clear benefit to the surety appears. Two large checks were certified by the bank, which, if they had been used, would have been diversions of the borrowed funds. They were not used, but were redeposited, and while they confuse the account on the bank's books they really amount to nothing in this tracing. The $5,105.77 was made up of $4,800 principal and $305 interest paid the bank. The principal which by reason of its use the bank ought to retain is $4,450.29. The proportion of interest attributable to it is $287, making $4,737.29 that the bank may retain. The difference, $368.48, must be restored by the bank and town with $89.38 interest to date of decree. Paragraph 8 of the decree is amended by striking the words "Fifty-One Hundred Five and 77/100 ($5105.77) Dollars together with interest up to the date of the decree in the sum of $1,238.82", and substituting "Three Hundred Sixty-Eight 48/100 ($368.48) Dollars together with interest up to the date of the decree in the sum of $89.38". As amended, the decree is affirmed, with costs of appeal to appellant.

HUTCHESON, Circuit Judge (dissenting).

When this cause was here before, the majority opinion correctly stated, "We recognize, however, that a bank acquires no subrogation to claims for labor or material by the mere application of its money to them, because a voluntary lender is never subrogated, as was held in Prairie State Bank v. United States, supra [164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412]. * * * It is the assignment of the June estimate that gives the Bank standing" [110 F.2d 278, 281, 134 A.L.R. 727]. It incorrectly held, however, that "The payment to the Bank was good as against the surety". From that holding, I dissented, pointing out that under general law, and particularly under Florida law, Union Indemnity Co. v. City of New Smyrna, 100 Fla. 980, 130 So. 453, the bank could not claim against any balance in the owner's hands when the surety takes over until the surety is fully exonerated, that is, has been repaid all the sums it has to pay out to finish the work.

On this appeal, the majority concedes that the bank took nothing by the assignment. Upon a theory of subrogation for which Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 136 So. 513, 145 So. 883, 885 and Federal Land Bank of Columbia v. Dekle, 108 Fla. 555, 148 So. 756 are cited in support, it again sustains the action of the town in preferring the bank to the surety, in respect of funds in the town's hands when the contractor defaulted and the surety took over. The result is a loss to the surety of the amount by which the bank was preferred. With deference, the Florida decisions the majority relies on are without application, and there are Florida decisions deciding exactly contrary to the way the majority has decided it, the express point at issue here. The Florida decisions the majority cites apply to an implied agreement for subrogation to a first mortgage, the generally accepted doctrine, that a lender will be subrogated to a first mortgage which his money has discharged when it was expressly agreed that he should be. They properly, I think, held that the lender was not a volunteer because in connection with a loan of money on security he had so acted as to keep alive for his protection the first mortgage his money had discharged. Here the contractor, to whose rights alone by taking an assignment of the June payment the bank undertook to succeed, had no right to the payment he sought to assign because in the state of his accounts that payment was not, and never would become, due. It is settled in Florida beyond any question that neither the taking of such an assignment nor the fact that the money the contractor secured by the assignment was used to pay claims against the job will permit the bank to be preferred to the surety as to monies the owner has on hand when the surety takes over. The Union Indemnity case, supra [100 Fla. 980, 130 So. 454], is on all fours with this one on its facts. There the contractor had failed to perform its contract, and the Indemnity Company, to satisfy the condition of its bond, undertook to complete the contract. At the time it took over, the city owed the company $18,703.82, and it cost the surety $21,162 to complete the work. As here, the State Bank and Trust Company made demand on the city for the payment of monies advanced to the contractor upon an assignment made by it in June of payments due him out of amounts then in the city's hands. As here, the amount so "paid by the [bank] to the [contractor] was paid for labor and services of employees engaged in the performance of the contract". The surety urging that no money was due to the contractor under the June estimate, that the assignment was inefficacious, and that the fact that the money was paid for labor and services was immaterial, prevailed. The court cited as authority the Florida East Coast Railway Co. v. Eno, 99 Fla. 887, 128 So. 622, 70 A.L.R. 506 and State v. Schlesinger, 114 Ohio St. 323, 151 N.E. 177, 45 A.L.R. 371, and from the opinion in the latter case it quoted the following with approval: "A surety on the bond of a contractor for public work, who completes the work after abandonment by the contractor, is subrogated *to all the rights of the state in the fund remaining at the time of declaration of forfeiture, and entitled to priority of payment of the balance of said fund as against the assignee of such contractor, to whom the balance of said fund had been assigned to secure loans received by him, the proceeds of which were used in making payment of the claims of laborers and materialmen, even though the surety on such bond was obligated to pay all claims of laborers and materialmen, and even though such money was loaned and such claims paid before declaration of.*" (Emphasis supplied.)

The Supreme Court of Florida then concludes: "In this case the surety was bound to pay the claims for labor and material

furnished in the construction contracted for. *When the surety undertook the completion of the construction, it became subrogated, to the extent necessary to protect it from loss, to all the rights which the city might have asserted as against the funds in its hands.* Such right attached at the time the contract of surety was made, and is one of the valuable rights which accrued to the surety upon its becoming obligated as such, and these rights could not be defeated by an assignment of the fund in the hands of the owner to secure a loan of money. The assignee of the contractor could acquire no greater right by reason of an assignment than that which the contractor himself might assert against the owner." 130 So. at page 456. (Emphasis supplied.)

In the Florida East Coast case, supra [990 Fla. 887, 128 So. 626, 70 A.L.R. 506], the court said of a bank which, as here, had taken an assignment from the contractor: "The bank, as Eno's assignee, occupies the same position as did Eno with respect to the moneys, having the same rights, and being subject to the same equities, conditions, and defenses, the assignment not being a negotiable instrument. The mere assignment 'of all sums due and to become due the contractor' in and of itself creates no different or other liability of the owner to the assignee than that which existed from the owner to the assignor."

The majority opinion on this appeal, while expressly declaring that it recognizes that this is so, yet because the contractor paid claimants off with funds loaned the contractor by the bank, gives the bank a better position than the contractor itself would have been in if it had made the payments out of its own funds. If the contractor were here claiming the monies in question for itself on the ground that it had used the money to pay off material claims which the surety would have had to pay if the contractor had not paid them, it would have no standing to do this for it was bound to indemnify the surety against loss and it cannot claim against any balance in the owner's hands as against the surety until the surety is fully exonerated. Since the contractor cannot do this for itself how can it by borrowing funds and then paying off material claims with them enable its lender to take a better position than the contractor could have taken if it had not borrowed the money but had paid these claimants with its own funds. The fallacy of the majority opinion is, I think, well pointed out in State v. Schlesinger, supra [114 Ohio St. 323, 151 N.E. 179, 45 A.L.R. 371], where it is declared "that the right of subrogation in the surety operates as an equitable assignment, and that, inasmuch as the surety is a party to the original contract, such equitable assignment takes priority over any assignment, legal or equitable, which may be given by the contractor to any third party who enters the transaction after its inception. * * * Laborers and materialmen who were paid by the money loaned by the bank to the contractor had no liens and the bank cannot therefore be said to have acquired existing and vested liens" by lending the contractor money to pay for labor and material. Illinois Surety Co. v. Galion, D.C., 211 F. 161, is to the same effect. The judgment should be affirmed. I respectfully dissent from its reversal.

Rehearing denied; HUTCHESON, C. J., dissenting.