## DANAIS v. M. DE MATTEO CONST. CO.
### Civ. A. No. 761.

United States District Court
D. New Hampshire.
Jan. 23, 1952.

J. Morton Rosenblum, Manchester, N. H., for plaintiff.

Sulloway, Piper, Jones, Hollis & Godfrey, Concord, N. H., for defendant and intervener.

CONNOR, District Judge.

This is an action by the trustee in bankruptcy of the New Hampshire Building and Construction Company, Inc., a New Hampshire corporation (hereinafter referred to as the bankrupt), seeking to recover for the bankrupt estate $30,834.16, due as accounts receivable for work and labor performed on three construction contracts for De-

Matteo Construction Company, a Massachusetts corporation (hereinafter referred to as DeMatteo). The Maryland Casualty Company, a Maryland corporation (hereinafter referred to as Maryland), which entered as intervener-defendant, claims title to said funds as equitable lienor by right of subrogation under payment and performance bonds furnished to the bankrupt. Thereunder, it was compelled to meet the cost of completing defaulted work. It alternatively asserts its right to said funds by an assignment contained in the applications for the bonds executed by the bankrupt.

Without trial, the cause was submitted upon an agreed statement of facts here summarized. For each of the three construction projects there was a written contract between the bankrupt and DeMatteo, DeMatteo being the principal contractor, and the bankrupt a subcontractor. In each instance a bond or bonds with the bankrupt as principal and Maryland as surety were executed in favor of DeMatteo as obligee. The agreed date of default common to all three projects is September 25, 1948. By letter dated September 23, 1948, DeMatteo notified Maryland of the defaults, and thereafter, on September 28, notice of defaults was given to Maryland by the bankrupt. Voluntary petition in bankruptcy was filed October 20, 1948.

The first contract, referred to as the "Gate House Job," a federal dam project in West Peterborough, New Hampshire, was entered into April 20, 1948. On April 21, a performance bond and a payment bond, each in the amount of $85,000, were executed by Maryland pursuant to written application by the bankrupt. The construction contract called for monthly payments for work accepted and for a ten percent retainage by DeMatteo. At the time of default, the bankrupt had earned $18,397.92, and had been paid $10,221.98. By letter dated September 24, 1948, Maryland notified DeMatteo of the assignment contained in the bond application, and thereafter asserted its claim to unpaid funds by assignment and otherwise. The contract price was $85,000; the balance of the contract price unpaid to the bankrupt at the time of default (earned and unearned) was $74,778.02. Upon completion of the work by Maryland, this amount was paid to it by DeMatteo. Maryland's loss was $17,177.04 after paying cost of completion, back charges due DeMatteo (including payrolls advanced), unpaid bills, and penalties. The trustee claims under this contract $8,175.94 ($18,397.92 earned, less $10,221.98 paid).

The second contract, entered into May 25, 1948, designated as the "Lynnfield-Wakefield Job," was to do certain work on a highway project in Wakefield, Massachusetts. Previously, on May 24, the bankrupt, as principal, and Maryland, as surety, had executed a single payment and performance bond in the amount of $80,000, in favor of DeMatteo as obligee. This bond, like the previous bonds, was executed pursuant to an application therefor signed by the bankrupt on the same date. The contract called for bimonthly payments and a fifteen percent retainage by DeMatteo. When the default occurred, the bankrupt had earned $58,645, and had been paid $38,823.81. As before, Maryland notified DeMatteo of the assignment contained in the bond application in connection with this project. The project was completed by DeMatteo, with which Maryland entered into a settlement agreement in the amount of $11,347.98, representing excess cost of completion, plus payrolls advanced by DeMatteo. In addition, Maryland paid $4,662.93, unpaid bills incurred by the bankrupt on this project prior to default. The contract price was $97,064.25; the balance of the contract price unpaid (earned and unearned) at the time of default was $58,240.44, the latter amount being applied by DeMatteo to the cost of completion. The trustee's claim is in the sum of $19,821.19 ($58,645 earned, less $38,823.81 paid).

The third contract was the "West Peterborough Highway Job," entered into June 14, 1948, whereby the bankrupt was to do certain work in connection with a highway and bridge project at West Peterborough, New Hampshire. On the same day, payment and performance bonds were executed pursuant to application signed by the bankrupt. The contract called for payment for

work done in each estimate period "less customary retained percentage." At the time of default, the bankrupt had earned $2,960.43, and had been paid $123.40. By letter dated October 7, 1948, Maryland notified DeMatteo of the assignment contained in the bond application for this project. After completion by DeMatteo, Maryland entered into a settlement with it in the amount of $2,646.51, representing the excess cost of completion, plus payrolls advanced by DeMatteo. The contract price was $10,061.50; the balance of the contract price unpaid at the time of default (earned and unearned) was $9,938.10, which was applied by DeMatteo to the cost of completion. The loss incurred by Maryland was $2,764.17, including the payment of $117.66 incurred by the bankrupt prior to default. On this contract, the claim of the trustee is in the amount of $2,837.03 ($2,960.43 earned, less $123.40 paid).

Although M. DeMatteo Construction Company is the sole defendant in the original complaint, all of the issues may be concluded in determining the claim of the trustee and those of the intervener, Maryland Casualty Company. In its capacity as surety for the trustee's predecessor, Maryland has incurred certain expense in undertaking to conclude one contract and in payment to DeMatteo Construction Company for the completion of the remaining two contracts. The funds to which the trustee and the intervener claim title were earned by the bankrupt but unpaid at the time of the defaults. The trustee maintains that such moneys are the property of the bankrupt estate, to be made available to meet the demands of all of the creditors. Maryland contends that, by virtue of the relationship of principal and surety, it has an equitable right to such funds, in that it became subrogated to the rights of the beneficiary, DeMatteo. Alternatively, it maintains that it is entitled to these moneys under an alleged assignment in the applications for the bonds. The issue is whether the trustee's claim is to be recognized as superior to that of the intervener's asserted equitable right as surety and/or as that of assignee.

It is well settled that there inures to the surety on a contractor's bond who completes upon default, or responds in damages, an equitable right through subrogation to the funds due its principal in the hands of the obligee. Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; First National Bank of Seattle v. City Trust Co., 9 Cir., 114 F. 529; State ex rel. Southern Surety Co. v. Schlesinger, 114 Ohio St. 323, 151 N.E. 177, 45 A.L.R. 371; Labbe v. Bernard, 195 Mass. 551, 82 N.E. 688, 14 L.R.A.,N.S., 457 and note. And this is so, independent of an assignment. Hartford Accident & Indemnity Co. v. Coggin, 4 Cir., 78 F.2d 471, 477, 478; Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48, 51. See Restatement of Security, § 141; also annotations in 45 A.L.R. 379; 134 A.L.R. 738; 164 A.L.R. 613. Whether a trustee in bankruptcy, charged with the duty to marshal the assets of the estate, is bound by this principle has been the subject of but brief judicial consideration. A search of the authorities discloses only one case wherein this issue is considered, Hartford Accident & Indemnity Co. v. Coggin, supra, which recognized the equitable right of the surety to similar funds as superior to the claim of the trustee.

It is the position of the trustee that to permit the payment of these funds to the surety would effect a preferential transfer in violation of the provisions of the Bankruptcy Act. Conceding that the rule stated above received recognition in a number of holdings, the trustee contends that subrogation of the surety's right to such funds, based upon the equitable lien doctrine, has been abrogated in the enactment of the amendment to the bankruptcy statute under date of March 18, 1950, Section 60, sub. a, of the Chandler Act, U.S.C.A. Title 11, Bankruptcy, section 96. Thus the primary inquiry is whether the settled rule has been nullified by this legislation. Examination of the language of the Act indicates otherwise. Subsection 6 of section 60, sub. a, does not declare the policy of the Act to be against the recognition of all equitable liens, but rather against the recognition of

those "where available means of perfecting legal liens have not been employed." Collier on Bankruptcy, 14th Ed., Vol. 4, Par. 60:50, p. 978. The entire subsection has application only where a legal lien can be acquired through overt action. Obviously it is without reference to the equitable lien which a surety acquires on funds unpaid to a defaulted contractor when the surety has to complete the work and pay laborers and materialmen. This equitable right, which is considered as synonymous and interchangeable with the term equitable lien, is not the equitable lien which is spoken of in the statute, but is one which is inherent in the relationship of surety and principal.

The legislative history (H.R.No.1293, U. S. Code Congressional Service, 81st Congress, 2d Session 1950, Vol. 2, p. 1985) discloses that the purpose of the revision was to remove serious doubts existing in finance and commerce upon the "validity of security taken in good faith and for present value" because of the decisions announced in Corn Exchange National Bank v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, and In re Vardaman Shoe Co., D.C., 52 F.Supp. 562. See Collier on Bankruptcy, 14th Ed., Vol. 3, paragraphs 60:38, 60:48, 60:50. The cases giving rise to the amendment had nothing to do with the equitable right of a competing surety to funds in the hands of the obligee. No reference is contained in the revision to the equitable principle here involved or any implication that it should be amended or repudiated. It would seem that if Congress intended that this equitable right should be subject to the operation of this amendment, it would so declare by appropriate language. Upon the foregoing and in the absence of any authority to the contrary, I am of the opinion that the accepted rule still obtains and has not been qualified, revised or terminated by this legislation.

It should be observed that none of the defaulted contracts were completed at a profit; in fact, there was a substantial loss incurred on each contract by the surety, even after it had the benefit of the funds here in issue.

Since it is clear that the surety is entitled to these funds by virtue of its equitable right of subrogation, independent of any assignment, it becomes unnecessary to determine the issue of whether the intervener's claimed assignments were preferential transfers. It is to be noted, however, that if this were the sole issue, the court has grave doubt that the transfers were sufficiently perfected under applicable state law to negate a preference.

I therefore conclude that:

■ (1) Upon default of the bankrupt, DeMatteo was entitled to apply all contract balances remaining in its hands, both earned and unearned, toward the cost of completion.

■ (2) On the two projects completed by DeMatteo, Maryland was entitled to have DeMatteo apply all contract balances, both earned and unearned, remaining in its hands toward the cost of completion before it became liable on its performance bonds, and nothing remained for the trustee to recover on these projects.

■ (3) On the project completed by Maryland, it had a prior equitable lien, independent of any assignment, on all contract balances, both earned and unearned at the time of default, to the extent necessary to reimburse itself for completion costs, labor and material claims, and penalties paid, and the trustee is not entitled to recover any portion of funds held by DeMatteo on the date of default and used by the surety in payment of the cost of these items.

■ (4) Maryland's equitable lien by right of subrogation on contract balances related back to the dates of the bonds which in each instance was more than four months prior to bankruptcy.

(5) The equitable lien acquired by Maryland does not constitute a preference under section 60, sub. a, of the Bankruptcy Act, either before or after its amendment.

(6) The trustee's complaint should be dismissed, with costs to both DeMatteo and intervener-defendant Maryland; and it is so ordered.