UNITED STATES for the use of BAC FUNDING CONSORTIUM, INC., a Florida non-profit corporation, Plaintiff,

v.

WESTCHESTER FIRE INSURANCE COMPANY, a Pennsylvania corporation, ACE American Insurance Company, a Pennsylvania corporation, Leno Dredging & Hauling, Inc., a Florida corporation, James A. Leno, an individual, Calvin Leno, an individual, Linell Leno, an individual, and Carolyn Leno, an individual, Defendants.

Case No. 13–22536–CIV.

United States District Court,
S.D. Florida.

Nov. 4, 2013.

Amy Leigh Fischer, F. Malcolm Cunningham, Jr., Cunningham Law Firm, West Palm Beach, FL, for Plaintiff.

Edward Etcheverry, Guy William Harrison, Etcheverry & Harrison LLP, Plantation, FL, Steve Kerbel, Etcheverry Harrison LLP, Fort Lauderdale, FL, for Defendants.

### ORDER ON WFIC'S MOTION TO DISMISS

JAMES I. COHN, District Judge.

**THIS CAUSE** is before the Court upon the Motion to Dismiss [DE 20] ("Motion") of Westchester Fire Insurance Company ("WFIC"). The Court has reviewed the Motion, Plaintiff's Opposition [DE 29], and WFIC's Reply [DE 54], and is otherwise advised in the premises.

## I. BACKGROUND

This action arises from disagreements relating to a public works project seeking to restore natural water flow within Florida's Everglades ecosystem. In May 2012, Defendant Leno Dredging & Hauling, Inc. ("Leno Dredging") entered into a construction contract with the United States Army Corps of Engineers relating to the installation of a water conveyance structure in Miami–Dade County (the "Project"). DE 1 ¶ 12. Leno Dredging obtained financing for the Project from Plaintiff BAC Funding Consortium, Inc. ("BAC"). *Id.* ¶ 14. Under their agreement, BAC would act as Leno Dredging's disbursement agent, and would advance payments to Leno Dredging's subcontractors and suppliers. *Id.* Leno Dredging promised to reimburse BAC for those payments when it was compensated for the Project by the government. *Id.*

WFIC is a surety company that provided the Miller Act Payment Bond (the "Payment Bond") for Leno Dredging's work on the Project. *Id.* ¶ 34. In the event that Leno Dredging did not promptly pay its subcontractors and suppliers, the

Payment Bond obligated WFIC to make those payments. *Id.;* DE 1–7.

BAC paid Leno Dredging's subcontractors and suppliers for their contributions to the Project pursuant to its agreement with Leno Dredging. *Id.* ¶¶ 15–17. Leno Dredging failed to reimburse BAC, however, and allegedly owes BAC $569,295.40. *Id.* ¶ 17. BAC seeks to recoup this amount from Defendants under various theories, including a claim against WFIC under the Payment Bond. *Id.* ¶¶ 32–38. WFIC has moved to dismiss the claim against it. DE 20.

## II. DISCUSSION

### A. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Glover,* 459 F.3d at 1308. "Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

A complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Id.* A well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556, 127 S.Ct. 1955 (internal quotation marks

omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955.

### B. *Analysis*

WFIC moves to dismiss BAC's claim against it on multiple grounds. First, WFIC argues that BAC, as a lender, is not a proper claimant under the Payment Bond. DE 20 at 4–6. Second, WFIC contends that BAC cannot salvage its claim by proceeding under a theory of equitable subrogation. *Id.* at 6–8. Finally, WFIC disputes that BAC is an assignee of any viable claim under the Payment Bond. DE 54 at 9–10. The Court will address each argument in turn.

#### 1. *BAC Is Not a Proper Miller Act Payment Bond Claimant*

 BAC, as a lender, does not come under the protections of the Miller Act, and cannot bring a direct claim to recover under the Payment Bond. "The purpose of a Miller Act payment bond is to protect subcontractors and suppliers who provide labor and material for a federal project...." *United States ex rel. Pertun Constr. Co. v. Harvesters Grp., Inc.,* 918 F.2d 915, 917 (11th Cir.1990). The Miller Act specifically requires a contractor on a federal public works project to obtain a payment bond "for the protection of all persons supplying labor and material" under the contract. 40 U.S.C. § 3131(b)(2). The universe of claimants who may obtain relief upon a payment bond is therefore limited to those who furnish labor or materials. *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107–08, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

 Loans for payments to laborers or suppliers, however, do not themselves constitute labor or material. *Bill Curphy Co.*

*v. Elliott,* 207 F.2d 103, 109 (5th Cir.1953).[1] A lender of funds for such payments therefore is not a proper claimant under a Miller Act payment bond. *Id.;* 8 Government Contracts: Law, Administration & Procedures § 49A.20[14] (Matthew Bender 2013); *see also Bank of Auburn v. U.S. Fid. & Guar. Co.,* 295 F.2d 641, 642 (5th Cir.1961) (holding that bond protecting "those persons who do work or furnish materials" did not protect bank lending money to contractor for payment to those persons); *United States ex rel. Fid. Nat'l Bank v. Rundle,* 107 F. 227, 229 (9th Cir. 1901) (holding that payment bond protecting suppliers of labor and material "d[oes] not extend to a bank which might lend money for the purpose of paying for such work and materials"). Because BAC did not furnish labor or materials for the Project, but instead lent funds to pay for such labor and materials, it is not a proper claimant under the Payment Bond, and its claim should be dismissed.

### 2. *BAC Cannot Assert a Subrogation Claim*

█ The Court also rejects the doctrine of equitable subrogation as salvaging BAC's claim. BAC contends that, even if it is not a proper direct claimant, it may raise a claim under the Payment Bond because it paid the subcontractors, laborers, and suppliers on the Project, and thus has rights of subrogation to their claims. DE 1 ¶ 36. BAC, however, is not entitled to the benefits of equitable subrogation, because it became a lender voluntarily.

█ A lender under no preexisting obligation to lend its money is a "volunteer" not entitled to the benefits of equitable subrogation. *E.g., Henningsen v. U.S. Fid. & Guar. Co.,* 208 U.S. 404, 411, 28 S.Ct. 389, 52 L.Ed. 547 (1908); *United*

*States ex rel. First Cont'l Nat'l Bank & Trust Co. v. W. Contracting Corp.,* 341 F.2d 383, 388 (8th Cir.1965); *Picker Fin. Grp. L.L.C. v. Horizon Bank,* 293 B.R. 253, 262 (M.D.Fla.2003) (discussing *Boley v. Daniel,* 72 Fla. 121, 72 So. 644, 645–46 (1916)). Because BAC voluntarily entered into its lending relationship with Leno Dredging, and was not previously obligated in any way to advance funds for the payment of laborers and materialmen on the Project, BAC's reliance on the doctrine of equitable subrogation is misplaced.

Those cases cited by BAC in opposition to the general rule that a voluntary lender is not entitled to subrogation are unavailing. BAC relies heavily upon *Town of River Junction v. Maryland Casualty Co.,* 133 F.2d 57 (5th Cir.1943), to suggest that someone who has paid laborers and materialmen who held bond claims may proceed against the surety under a theory of subrogation. DE 29 at 5–6. *River Junction,* however, did not involve a claim by a lender to recover under a payment bond, and the Fifth Circuit in that case doubted "[w]hether ... the [lender] could actively enforce a subrogation against the surety of the claims its money paid." 133 F.2d at 59. Similarly, *National Fire Insurance Co. of Hartford v. Fortune Construction Co.,* 320 F.3d 1260, 1270 n. 13 (11th Cir. 2003), *see* DE 29 at 6–8, does not address the factual circumstances herein, and instead deals with a controversy over priorities of claims to a fund. The Court finds BAC's remaining arguments on this point similarly unpersuasive.

More fundamentally, BAC's contention that its loans for payments to subcontractors gave rise to a subrogation claim would require the Court to ignore prior limitations on who may sue under a Miller Act

---

1. Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of* *Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

bond. Under BAC's approach, any lender of funds for payments to laborers or materialmen would have an equitable subrogation claim, essentially writing out of existence the line of cases holding that such lenders are not proper Miller Act bond claimants. *Cf. Bill Curphy Co.*, 207 F.2d at 109. In *United States ex rel. First Continental National Bank & Trust Co. v. Western Contracting Corp.*, 341 F.2d 383 (8th Cir.1965), the Eighth Circuit rejected a similar attempt by a bank to sue under a Miller Act bond on a theory of subrogation. In that case, the bank had advanced money for payments to laborers and materialmen. *Id.* at 386. The Eighth Circuit held that to allow the bank to recover under the bond, which provided for protection of laborers and materialmen, would expand the coverage of such bonds beyond their previously recognized limits. *Id.* at 388. This Court is persuaded by the reasoning of *Western Contracting Corp.* that allowing a lender to proceed under a Miller Act bond on a theory of subrogation would expand coverage under such bonds beyond their previously recognized limits. Lenders are not proper Miller Act payment bond claimants, and BAC may not circumvent that rule by proceeding under a theory of subrogation.

### 3. *BAC's Claim Fails Under a Theory of Assignment*

BAC suggests for the first time in its Opposition that it has obtained the right to bring its claim as a result of an equitable assignment of the claims of the subcontractors and suppliers who worked on the Project. DE 29 at 4–11. However, BAC does not plead any basis for a finding of equitable assignment. Further, because the subcontractors and suppliers were paid for their work, they had no claims to assign.

■ Equitable assignment may exist where the parties intended to effect an assignment or where necessary to avoid injustice. *Jeld–Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 07–22326, 2008 WL 2359747, at *17, 2008 U.S. Dist. LEXIS 44277, at *55 (S.D. Fla. June 5, 2008); *SourceTrack, LLC v. Ariba, Inc.*, 958 So.2d 523, 526 (Fla. 2d DCA 2007). The Complaint is devoid of any allegation that the subcontractors, suppliers, or laborers intended to assign their rights to payment for work on the Project to BAC. The Court disagrees with BAC's conclusory assertion in its Opposition that the releases from subcontractors of their liens against Leno Dredging, which BAC obtained in its role as disbursing agent for Leno Dredging, *see* DE 29 at 11, were somehow assignments in disguise. Nor would any injustice arise from denying BAC recovery under the Payment Bond. Given that lenders are not proper claimants under Miller Act payment bonds, BAC should have had no expectation that it could bring a claim under the Payment Bond when it agreed to provide financing to Leno Dredging.

■ Furthermore, an assignee of a claim has no greater legal right than the assignor. *E.g., Kostelac v. Allianz Global Corp. & Specialty AG*, 517 Fed.Appx. 670, 675–76 (11th Cir.2013) (per curiam); *Crossman v. Fontainebleau Hotel Corp.*, 273 F.2d 720, 725 (5th Cir.1959). BAC states that, acting as an agent of Leno Dredging, DE ¶ 14, it "paid subcontractors, suppliers[,] and laborers for work on the Project," DE 1 ¶ 36. Because the subcontractors and suppliers were paid for their work, they had no claims for reimbursement under the Payment Bond which they could assign to BAC. *See* DE 1–7. BAC has therefore failed to plead that the subcontractors and suppliers assigned it any viable claims.

### III. CONCLUSION

In sum, BAC is not a proper claimant under the Payment Bond. BAC may not

remedy this deficiency by pleading theories of subrogation or assignment. BAC's claim against WFIC under the Payment Bond therefore fails as a matter of law, and should be dismissed. In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant Westchester Fire Insurance Company's Motion to Dismiss [DE 20] is **GRANTED.** Count I of the Complaint [DE 1] is **DISMISSED with prejudice** with respect to Defendant Westchester Fire Insurance Company.