## MARYLAND CASUALTY CO. v. LINCOLN BANK & TRUST CO.

### No. 1052.

District Court, W. D. Kentucky.

Feb. 22, 1937.

Eugene R. Attkisson, of Louisville, Ky., for plaintiff.

Edward P. Humphrey, Marvin H. Taylor, and Emile Steinfeld, all of Louisville, Ky., for defendant.

HAMILTON, District Judge.

This case is pending before me on motion to dismiss plaintiff's bill in equity on three grounds:

1. Lack of equity.

2. Lack of lien.

3. No right of subrogation.

The plaintiff is a Maryland corporation engaged in the casualty and insurance business. The defendant is a state bank incorporated under the laws of Kentucky.

On December 14, 1933, C. J. Redmon, doing business under the name of the Redmon Heating Company, and engaged in the general contracting business, was awarded a contract by the United States Government for the construction of a public building at Roanoke, Va. He executed a contractors' bond pursuant to provisions of 40 U.S.C.A. c. 3, § 270 (Act March 3, 1911, § 291, 36 Stat. 1167), in the penal sum of $155,000, subsequently increased $42,000; a total of $197,000. The plaintiff became his surety. The bond was conditioned on the contractor performing all terms of the contract and especially the prompt payment to persons supplying material or labor in the execution of the work.

In Redmon's application to the plaintiff for the bond, he agreed to indemnify and hold it harmless from all liability for damages, loss, cost, charges, or expenses of any kind by reason of the suretyship. At the time of the execution of the bond, he assigned and transferred to his surety to indemnify it all of his right, title, and interest to the tools, plant, equipment, and materials used in or upon the premises in the performance of the contract. As a further indemnity, the principal agreed that if there was a default by him of the terms of the contract, all payments due or to become due under it should be paid to the plaintiff, and whether paid or not should be considered as assigned to it, and after its obligations had been satisfied, any remaining sum should be paid to the principal. It was further agreed that the plaintiff should, at its option, be subrogated to all the rights, properties, and interest of the principal in the contract.

Redmon defaulted in performance of the contract, June 26, 1934, and abandoned it. The United States called on this plaintiff, as surety, to either perform or cause some one else to do so.

The plaintiff, after proper advertisement, relet the contract, and was required to pay $158,837.14 in excess of all sums received from the United States for its completion.

Prior to June 26, 1934, plaintiff had paid for labor and materials for its principal $5,000 under its suretyship contract. On May 31, 1934, Redmon had on deposit in a checking account with the defendant a balance of $7,809.78, and on that date was indebted to it in the sum of $7,250 on a note which the bank charged against his bank balance. On June 1, 1934, Redmon and his wife executed to the bank a mortgage in the sum of $5,500, upon certain real estate belonging to Mrs. Redmon, and on that date the bank restored Redmon's checking account, with the exception of $1,750, which was applied on his indebtedness.

On June 11, 1934, Redmon received a check from the United States in the amount of $6,147.50, payment under his contract, which sum was deposited to his checking account in defendant's bank and knowing the source of the deposit, the bank, with the consent of Redmon, paid out of it the note of $5,500, together with accrued interest and released the lien on the real estate.

The plaintiff in this action seeks to recover from the bank the sum of $5,500 with 6 per cent. interest thereon from June 1, 1934, charging that it received the money with full knowledge of its source and colluded with the contractor to use it in payment of the mortgage indebtedness to the bank, and it knew, or as a matter of

law should have known, the plaintiff was entitled to have this sum applied to the payment of labor and materials used in completing the construction contract; and the bank further knew the plaintiff had a lien upon the fund. Redmon is wholly insolvent.

The plaintiff predicates its suit on its suretyship contract, claiming (1) that it had an assignment of the entire fund accruing to Redmon under the contract which it guaranteed, (2) that it was entitled to a lien by reason of subrogation, or (3) that it had an equitable lien from the date of its contract of suretyship.

The plaintiff rests its claim on a contractual assignment and on subrogation, both legal and conventional. The assignment to the surety of the money arising out of the contract is void because of the provisions of 31 U.S.C.A. § 203. See Martin v. National Surety Company (C.C.A.) 85 F.(2d) 135; London & Lancashire Indemnity Company v. Endres (C.C.A.) 290 F. 98.

Plaintiff's rights, if any, are confined to subrogation, not contract, and arise from the relationship of the parties under an equitable principle. The rule is well settled that independent of assignment, the surety on a contractor's bond who completes the contract on default of the principal, or in lieu thereof pays damages for the breach, is subrogated to the rights of the obligee. To the extent necessary to reimburse himself, he has an equity in the funds due or unpaid to the contractor, superior to that of a mere assignee or of any person who receives or appropriates the proceeds of the contract with notice of the contractor's default and of the surety's rights. Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Company, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; First National Bank v. City Trust Company (C. C.A.9th) 114 F. 529; State ex rel. Southern Surety Company v. Schlesinger, 114 Ohio St. 323, 151 N.E. 177, 45 A.L.R. 371; Labbe v. Bernard, 196 Mass. 551, 82 N.E. 688, 14 L.R.A.(N.S.) 457; 21 R.C.L. 1113, 1114.

The rights of the surety to the remedies of the creditor are incomplete or inchoate and cannot be enforced until he has discharged his principal's obligations. These rights inhere at the time the relationship begins, and relate back to the date of the contract of suretyship, but the lien is restricted to funds due, retained, or unpaid at the time of default.

Where payments are made to a public contractor unconditionally, he can use the money so paid in any way he desires. Such payments are not subject to an equitable lien, nor does the right of subrogation inhere to a surety of the payee. "Subrogation" is a substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. The beneficiary of subrogation can acquire no greater rights than those of the party for whom he is substituted, and it must inevitably follow that if a surety pays the debt of his principal he can have no rights except such as the creditor had. If the creditor could not recover a payment from the surety's principal, the surety could not.

There is no contrariety of opinion in the law that one for whose benefit the doctrine of subrogation is invoked and enforced can acquire no higher or greater rights than those of the person for whom he is substituted. See Pratt Lumber Company v. T. H. Gill Company (D.C.) 278 F. 783.

In contracts for public works, payments are usually made on some basis before completion, and a part of the proceeds retained to meet claims for wages and materials. Retained percentages or sums unpaid at time of default are for the protection of both the surety and the owner, and it could be provided in building contracts that all payments for the work should be first applied to those who had furnished labor, equipment, materials, or supplies; but unless so provided in the contract, the payments to the contractor are freed from the equities of the surety. Fidelity & Deposit Company of Maryland v. Union State Bank of Minneapolis (D.C.) 21 F.(2d) 102; Standard Oil Company v. Day, 161 Minn. 281, 201 N.W. 410, 41 A.L.R. 1291.

The cases of Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Company, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Exchange State Bank v. Federal Surety Company (C.C.A.) 28 F.(2d) 485; United States Fidelity & Guaranty Company v. City of Bristow (D.C.) 4 F.(2d) 810; Glades County, Florida, v. Detroit Fidelity & Surety Company (C.C.A.) 57 F.(2d) 449; Maryland Casualty Company v. Dulaney

Lumber Company (C.C.A.) 23 F.(2d) 378, confine the lien and equities of the surety to retained percentages or sums due but unpaid at the time of the contractor's default.

 It is alleged in the petition that the check subsequently delivered to the bank, and out of which it paid its debt, was the check of the United States Veterans' Administration and was a payment under the contract which Redmon had with the United States and the performance of which the plaintiff had guaranteed. There is no allegation in the petition that this payment was made by mistake or that the United States could have recovered it from Redmon. If the payment was voluntarily made, as I must assume from the allegations of the petition, and was not to be applied to the payment of any obligation arising under the contract Redmon had with the United States, there is nothing to which the plaintiff could be subrogated, and the motion to dismiss the petition should be sustained.