# Napier et al. v. Duff.

Dec. 15, 1939.

T. E. Moore for appellants.

S. E. Duff for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

W. B. Napier, in the year 1928, executed and delivered to the Perry Bank & Trust Company his note in the sum of $1000 with E. C. Duff, the father of appellee, and another as sureties thereon and to indemnify the sureties, Napier, together with his wife, the appellant, Myrtle Napier, executed and delivered to them a mortgage on certain land described in the petition.

The Bank became insolvent and suit was instituted on the note against appellants and the sureties. Appellee, Z. T. Duff, had a deposit of approximately $5500 with the Bank, but E. C. Duff was the owner of a sufficient amount of this deposit to satisfy the note. Answer was filed setting up this fact and praying that E. C. Duff's interest in this deposit be applied to the payment of the note. Judgment was entered to this effect and the note was charged to that portion of the account of Z. T. Duff owned by E. C. Duff.

Shortly after E. C. Duff's death, Z. T. Duff instituted the present action against appellants, setting out these facts and alleging that the note and all obligations of Napier to E. C. Duff had been transferred and assigned to appellee by E. C. Duff. Judgment was sought for the amount of the note and interest and for a foreclosure of the mortgage executed to the sureties to indemnify them against loss. Appellants defended on the ground that there was no transfer or assignment to appellee and also pleaded that, even though there was such assignment, appellee was entitled to recover only the value of the insolvent bank deposit which had been applied to satisfaction of the note. It was further pleaded that Myrtle Napier was the wife of W. B. Napier and was not bound for any part of the debt but signed the mortgage only as W. B. Napier's wife. Judgment was rendered against both appellants for the full amount of the note and interest and ordering a sale of the land covered by the mortgage to satisfy the judgment. This appeal is from that judgment.

Appellants' defense that there was no assignment of the note by E. C. Duff to the appellee arises out of their contention that there was no competent proof of such assignment since the deposition of Chester Duff should have been suppressed on their motion, thereby eliminating all evidence as to the assignment. The motion to suppress the deposition was based on the fact that the case was under submission when the deposition was taken. Even if this were true it is doubtful that it would have furnished sufficient reason to justify the suppression for we find that after May 18, 1937, the date of original submission, both parties filed pleadings and appellants took a deposition them selves, and it seems that such action amounted to a mutual understanding or agreement to ignore the submission.

But without deciding that question, we find that on September 8, 1937, judgment was entered and that on September 29, this judgment, and the order or submission, were set aside. The case was then resubmitted *only* on exceptions to depositions. The deposition of Chester Duff which furnishes the only proof of assignment of the note to appellee, and which appellants contend should have been suppressed, was taken on September 26, 1938, long after the original order of submission had been set aside, and when the only submission was on exceptions to depositions. The trial court, therefore, correctly overruled the motion to suppress.

The testimony contained in the deposition was sufficient to show an assignment of the note by C. E. Duff to appellee—in fact there is no contention made that it is not. No written assignment was shown, but this was not necessary. No particular form is necessary to constitute an assignment—a parol assignment is valid, Kentucky Statutes, Section 474; Gray v. Briscoe, 6 Bush 687. The assignment of the note, which was in effect an assignment of the surety's right of indemnity, necessarily carries with it an assignment of the indemnifying mortgage executed to the surety by the principal.

The remaining question to be considered is the proper amount for which judgment should have been rendered; that is, should it have been for the amount of the note and interest, or for the amount of liquidating dividends of the insolvent bank, applicable to the bank

deposit used to satisfy the note. The liquidator of the bank testified that the bank had paid 31% in dividends and would pay between 5 and 10% more, the exact amount of future dividends being impossible of ascertainment.

It seems to have been universally held at common law that in the absence of an express agreement, the law implies a contract that the principal will indemnify the surety for any payment the latter may make to the creditor in compliance with the contract of suretyship. 2 R. C. L. 1097; 50 C. J. 255, and cases therein cited, including Joyce v. Joyce's Adm'r, 1 Bush 474. It was generally held that a surety would not be permitted to realize a profit at the expense of his principal. Accordingly, where he paid the principal's obligation in property or in depreciated bank notes, it was held he could only recover the value of the property or bank notes, and where he compromised with the creditor he could only recover the amount paid in compromise. Owings v. Owings, 3 J. J. Marsh. 590; Crozier's Trustees v. Grayson, 4 J. J. Marsh. 514; Stone v. Hammell, 83 Cal. 547, 23 P. 703, 8 L. R. A. 425, 17 Am. St. Rep. 272; Jordan's Adm'r v. Adams, 7 Ark. 348, and Curtiss Aeroplane & Motor Corporation v. Haymakers Warehousing Corporation et al., Tex. Civ. App., 264 S. W. 326. In short, the obligation of a principal to his surety was merely that of indemnity, and a surety could only recover from the principal the amount paid by him in satisfying the principal's obligation.

There was some conflict of authorities as to whether or not a surety who paid a note might take an assignment thereof from the creditor and recover the full amount of the note from the principal although the surety had paid to the creditor less than the full amount in taking the assignment. In Hickman & Pearson v. McCurdy, 7 J. J. Marsh. 555, it was held that a surety in discharging the principal's obligation to the creditor for less than the face amount of the obligation might take an assignment thereof and recover the full amount of the debt, without regard to the sum he had paid in discharge of it. However, in 1893, there was enacted by the legislature an act that has now become Kentucky Statutes, 4665, which provides in part as follows:

"If a surety pays the whole or any part of a debt

or liability for which he is bound as such, he may recover the amount, with interest from time of payment, from the principal by action at law, or by motion after ten days' notice in writing."

This statute limits the amount to be recovered by a surety who discharges the obligation of his principal to the amount actually paid by the surety. Although the surety takes an assignment of the obligation from the creditor and brings his action against the principal on the assigned obligation, nevertheless the substance of that action is one by a surety against a principal, and by the express terms of the statute he may recover only the amount paid by him. A surety may not be permitted to circumvent the statute by suing on the original obligation rather than on the obligation of indemnity. The court looks to the substance rather than to the form, and in doing this determines that it is an action by a surety against his principal to recover for the loss he may have sustained by reason of his suretyship. All the more is this true in the instant case where a foreclosure of the mortgage is sought—in suing on the mortgage appellee sued on the express contract of indemnity contained therein.

In Redford v. Crowe's Adm'x, 225 Ky. 142, 7 S. W. (2d) 842, it was held that where a surety took an assignment of the principal's note, his cause of action against the principal on the note was controlled by the fifteen year statute of limitation, Kentucky Statutes, Section 2514, as being on the assigned note and not by the five year statute (Section 2515) applicable to the implied common law obligation of the principal to indemnify the surety. It was also intimated in that case that the surety, suing as assignee of the note, might recover the full amount thereof from the principal, although he had paid a lesser amount in discharging the note. However, this question was not necessary to a decision of the case and may be regarded as dictum. No discussion was entered into in that case, concerning the effect of Section 4665, limiting the surety's recovery to the amount paid by him.

We are of the opinion that Section 4665 limits the surety's right of recovery to the amount paid by him in satisfaction of the principal's obligation, regardless of

the fact that the surety takes an assignment of the note and sues the principal thereon.

This being true, the appellee may not recover more than the amount paid by the surety since, as assignee of the surety, he obtained no greater rights than his assignor had. The amount paid by the surety was not, of course, the face amount of the deposit used to satisfy the note, $1101.22, but the actual value of the deposit at the time the note was charged thereto. This actual value was whatever percentage of the deposit the bank finally paid thereon.

Since the proof did not disclose the exact amount of liquidating dividends, applicable to the bank deposit used to satisfy the note, it will be necessary on a return of the case to the trial court to hear further proof to ascertain that fact. No doubt liquidation of the bank has been completed by this time and this matter may now be definitely ascertained. Since $1101.22 of the deposit was used to discharge the note, appellee is entitled to judgment for whatever percentage of that sum the bank paid on deposits.

The appellee was not entitled to personal judgment against the appellant, Myrtle Napier. She did not sign the note and executed the mortgage only for the purpose of releasing her dower rights in the land. The personal judgment against her should be set aside.

Judgment reversed with directions to hear further proof to ascertain the percentage paid on deposits by the bank and after doing so to enter 'a judgment in conformity with this opinion.

The Whole Court sitting.