**HOWELL CONSTRUCTION, INC., Plaintiff,**

v.

**UNITED PACIFIC INSURANCE CO., Defendant.**

**Civ. A. No. C90–0147–BG(H).**

United States District Court, W.D. Kentucky, at Bowling Green.

April 28, 1993.

Memorandum Opinion on Motion to Reconsider, July 21, 1993.

Charles F. Merz and Laurence J. Zielke, Pedley, Ross, Zielke, Gordinier & Porter, Louisville, KY, for plaintiff.

Scott P. Zoppoth and Stephen E. Smith, Goldberg & Simpson, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This diversity case comes before the Court on the motion of Plaintiff, Howell Construction, Inc., for partial summary judgment and on the motion of Defendant, United Pacific Insurance Company, for summary judgment on all issues. Plaintiff sues Defendant in connection with a government contract, initially awarded to Plaintiff, and finally performed by Defendant as Plaintiff's surety. The subject of this case is the proper disposition of funds in Defendant's possession. Under the theories of breach of contract, tortious conversion and promissory estoppel, Plaintiff claims that it is entitled to those funds constituting the Defendant surety's profit under the government contract, that is, the balance of the contract price and the reasonable expenses and administrative costs that Defendant incurred to complete performance. For the reasons stated herein, this Court concludes that Plaintiff is entitled to those funds.

### I.

The United States Government awarded Plaintiff a contract to paint the exteriors of approximately 620 buildings located on the army base of Fort Knox, Kentucky in exchange for $989,375. The contract required Plaintiff to tender full performance by mid-October, 1988. Early on, contract relations soured due to the impossibility of performance or Plaintiff's default. That dispute, however, is not an issue in this case. Plaintiff is pursuing a resolution of that dispute by an appeal to the Armed Services Board of Contract Appeals to determine whether Plaintiff is entitled to $376,250 for partial performance prior to the government's termination of the contract.

The case at bar concerns a suretyship created in connection with Plaintiff's government contract. As mandated under the Miller Act, 40 U.S.C. § 270a(a)(1), Plaintiff secured from Defendant a Performance Bond in which Defendant guaranteed performance of the government contract totalling $989,-375. In consideration of this suretyship, Plaintiff paid more than a $9,000 premium and, pursuant to an express condition precedent of the Performance Bond, entered into a Continuing Agreement of Indemnity—Contractor's Form. Under this indemnification agreement, Plaintiff agreed to indemnify Defendant against loss should Defendant have to perform on the bond.

After declaring Plaintiff in default, the federal government acted upon the suretyship arrangement and executed a takeover agreement with Defendant. The terms of the takeover agreement bound Defendant to act as general contractor for the completion of the painting project and required the government to turn over the balance of Plaintiff's government contract to Defendant.

The government had not paid Plaintiff's invoices of $376,250 before transferring the contract balance to Defendant under the takeover agreement. Instead, the government withheld 20% of the invoiced amount as protection against its potential liability to Plaintiff. To date, Plaintiff has yet to receive any payments under the government contract other than $32,000 for start-up expenses.

Pursuant to the takeover agreement, the government tendered to Defendants more than $800,000, a negotiated amount representing roughly 80% of Plaintiff's government contract. Plaintiff initially raised objections with Defendant to the takeover arrangement since Plaintiff believed that it was entitled to more than a 20% remuneration for the completion of 148 buildings. In turn, Defendant assured Plaintiff that it would not prejudice Plaintiff in the completion of the

government contract despite the terms of the takeover agreement. Specifically, Defendant stated to Plaintiff in at least two letters that it would not profit from the takeover agreement but, after deducting its reasonable expenses, would promptly reimburse Plaintiff the balance.

Rather than seeking a declaration of rights under the performance bond, Plaintiff relied on Defendant's assurances and cooperated with Defendant by securing a subcontractor, Jericho Painting Company, to complete performance for a total of $550,000. In due course, Jericho tendered full performance at the agreed price leaving Defendant with a balance of approximately $250,000. Meanwhile, Plaintiff holds unpaid invoices totalling $376,250 for partial performance. Although Defendant represents that Plaintiff is suing for the "profit" from the government contract, Plaintiff contends that at least a portion, if not all, of the contract balance represents a restitutionary amount to which Plaintiff is entitled for painting 148 buildings, allegedly equivalent to 40% of the government contract.

## II.

The Court must determine whether Plaintiff is entitled to the balance of the takeover agreement less Defendant's reasonable costs. The legal basis for Plaintiff's claim is the law of suretyship; the Miller Act is not in issue. The Court sitting in diversity jurisdiction, therefore, must apply the law of the forum state of Kentucky. There being no genuine issue of material fact, this case is ripe for summary disposition.

## III.

In *Napier v. Duff,* the Kentucky Court of Appeals stated the general rule that a "surety would not be permitted to realize a profit at the expense of his principal" even where the surety compromised a lower amount with the obligee. *Napier v. Duff,* 281 Ky. 779, 782, 136 S.W.2d 1083 (1939). The court noted, however, that there was some authority for the exception that a surety who takes an assignment from the obligee may, nevertheless, be entitled to the full amount of the assignment at the principal's expense. *Id.*

However, in construing a Kentucky statute now codified as K.R.S. 412.080, the court stated that the law of Kentucky did not recognize such an exception. The court indicated that Kentucky, instead, follows the general rule that limits a surety's recovery against the principal to the amount "actually paid" regardless of whether a surety takes an assignment. *Id.* at 783–84, 136 S.W.2d 1083.

■ In other words, a surety who discharges the obligation of its principal even under an assignment from the principal's creditor or obligee, as the case may be, may not thereafter realize a profit from its assignment. Otherwise, a surety could enforce its rights under the assignment with the obligee against the principal, over and above its indemnification rights as a surety, as a means of realizing a profit from the assignment. As a simple example of this alternative, suppose the maker of a note defaults; the payee turns to the surety for satisfaction; the surety, however, is able to negotiate an assignment of the note for 80% of the face amount (after all, a surety may assert the maker's defenses against the payee); under the assignment exception, the surety could sue the maker for the face amount turning a 20% profit in addition to consideration received for guaranteeing the note.

The *Napier* court expressly rejected this result. Exalting substance over form, the court reasoned that suretyship principles prevail over assignment principles and construed a surety's rights against the principal solely as the right against loss, not a right to profit. *Id.*

Research discloses no Kentucky authority subsequent to or contrary to the *Napier* holding. Moreover, there is other authority for the proposition that a surety may only retain those funds sufficient to cover its costs. *American Jurisprudence* states:

The surety has a right to retain only so much of the money or property received [from the government] as will reimburse him for having discharged the principal's

obligation; the principal may sue the surety for any surplus received by him.

74 Am.Jur.2d *Suretyship* § 205 (1974).

■ In a contract for suretyship, Plaintiff paid consideration to Defendant for assuming the duty to guarantee performance of Plaintiff's government contract. Once it became obligated to perform under the bond, Defendant was still acting as a surety and remained entitled only to an amount occasioned in the event of its loss or expense. Defendant's rights to any profit pursuant to the takeover agreement are of no consequence to the suretyship. Defendant realized its gain in the form of premiums paid at the outset of the contract for suretyship. As a surety, Defendant held other amounts in excess of its liability as a fiduciary for the benefit of Plaintiff. To hold otherwise would bestow upon Defendant an undeserved windfall gain.

The parties' express agreement itself evidences this fiduciary principle. In their agreement, Plaintiff granted Defendant the power to act as its attorney-in-fact. Of particular importance is the sixth clause of the indemnification agreement:

> That the entire contract price of any contract referred to in a Bond or Bonds, whether in the possession of the [Principal] or another, shall be and hereby is impressed with a trust in favor of Surety for the payment of obligations incurred for labor, materials and services in the performance of the contract work for which Surety would be liable under such Bond or Bonds and for the purpose of satisfying the conditions of the Bond executed in connection with the contract.

(Plaintiff's Mo. for Summ. Jud. Exhibit A). Defendant's rights in the entire contract price is expressly qualified with the phrase "for the payment of obligations incurred." The contract itself therefore limits Defendant's rights to those of indemnification and does not disclaim a surety's fiduciary obligations.

Perhaps the most compelling reason to award Plaintiff these excess payments is Defendant's written admission that it had no right to any funds over and above its costs. In a letter to Plaintiff's attorneys dated September 5, 1989, counsel for Defendant wrote, "As you are aware, the Surety cannot profit from its takeover of the project. Any surplus funds, after costs, losses and expenses are deducted, shall be paid to Howell." (Plaintiff's Mo. for Summ. Jud. Exhibit B). In reliance on this and other representations, Plaintiff took no action to interfere with Defendant's completion of the contract or to otherwise preserve its rights. Defendant's express admission demonstrates that it understood the prevailing law about a surety's fiduciary obligations in the disposition of such funds.

Defendant argues that a surety is entitled to the entire balance of the government contract, over and above any loss incurred while performing the principal's obligation. Defendant cites no Kentucky authority for its position, however, and the *Napier* decision holds to the contrary.

Defendant also emphasizes that Plaintiff, as a defaulting party, terminated its rights in the government contract and that, as a consequence, Defendant entered into a new agreement with the government.[1] Although from all appearances Defendant undertook a new risk by contracting directly with the United States to complete Plaintiff's contract, Defendant in fact and law remained indemnified by Plaintiff against loss. Absent an assumption of real, non-illusory risk under the new contract, Defendant's bargain is limited to consideration paid for tne suretyship arrangement. If a surety's bargain included profits while remaining indemnified against loss, the result is a surety's windfall gain. The law of Kentucky accordingly forecloses a surety's right to profit on a new assignment from the obligee. *Id.* at 782–783, 136 S.W.2d 1083. The Court concludes that the longstanding rule of suretyship represents the best policy resolution of this matter.

The Court, therefore, holds that Plaintiff is entitled to an accounting of Defendant's transactions under the government contract and that Plaintiff is entitled to any amounts

---

1. This argument is also the subject of Plaintiff's motion to reconsider the judgment. For a clarification of this argument and the Court's bases for overruling Plaintiff's motion, see page 109.

retained by Defendant in excess of Defendant's loss. Having resolved the issue of law in favor of Plaintiff, the Court need not address Plaintiff's remaining theories of recovery.

For the reasons set forth in this Memorandum Opinion, Plaintiff's motion for partial summary judgment is sustained. The Court is entering an order consistent with this Memorandum Opinion.

## MEMORANDUM OPINION ON MOTION TO RECONSIDER

This diversity case comes before the Court on the motion of Defendant, United Pacific Insurance Co., for reconsideration of the Court's Order dated April 28, 1993 sustaining Plaintiff's motion for partial summary judgment and overruling Defendant's motion for summary judgment. Plaintiff, Howell Construction, Inc., sues Defendant in connection with a government contract, initially awarded to Plaintiff, and finally performed by Defendant as Plaintiff's surety. The prior motions addressed the issue of whether a surety may retain any funds in excess of its costs and reasonable expenses in performing the obligation of its principal even where the surety and the obligee enter into a new agreement. Under the law of Kentucky, *Napier v. Duff,* 281 Ky. 779, 136 S.W.2d 1083 (1939), the Court held that Plaintiff is entitled to an accounting of Defendant's transactions under the government contract and that Plaintiff is entitled to any amounts retained by Defendant in excess of Defendant's loss.

Defendant's motion to reconsider raises the issue of to what extent Plaintiff's settlement with the government, the obligee, or to what extent Plaintiff's alleged concealment of their settlement implicates the Court's ruling on the motions for summary judgment. For the reasons stated below, the Court holds that the resolution of Plaintiff's dispute with the government is of no legal consequence to Plaintiff's dispute with Defendant.

Defendant argues that disclosure of the terms of Plaintiff's settlement with the government is necessary to determine the impact upon the accounts and rights of the respective parties. The Court disagrees. While it is true the Court held in abeyance the motions for summary judgment for a while pending the outcome of Plaintiff's claim against the government, the basis of that ruling was under a mistaken impression that the proposition quoted in *Maryland Casualty Co. v. Lincoln Bank & Trust Co.,* 18 F.Supp. 375 (W.D.Ky.1937), invalidating assignments and limiting rights to subrogation was good law. See *Martin v. Nat'l Surety Co.,* 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937) in which the Court held that the anti-assignment statute, 31 U.S.C. § 3727 (formerly § 203) is inapplicable as between principal and surety where the government's rights are finally determined and concrete. *See also Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 141 n. 23, 83 S.Ct. 232, 237 n. 23, 9 L.Ed.2d 190 (1962).

The rights of these parties, therefore, are determined under contract principles rather than any alternative rules of equity. The government's liability is not implicated in any way by the disposition of funds in Defendant's possession since Defendant was presumably able to perform on the bond at a profit. All liabilities between the government and Defendant were discharged, and the subject of this suit is the validity of Defendant's position vis a vis Plaintiff at the time of that discharge. Regardless of whether Plaintiff is made whole through a settlement with the government or whether Plaintiff is "double-dipping", and the Court agrees with Plaintiff's strenuous argument that neither is true, the narrow issue is whether Defendant in its own right is entitled in the first place to retain funds over and above its loss.

*Napier v. Duff* holds that a surety who discharges the principal's obligation is limited to indemnity "even though he takes an assignment of the obligation from the creditor and brings actions against the principal thereon." *Id.,* 281 Ky. at 783, 136 S.W.2d 1083. The fact that Defendant in this case is left holding the funds, as if fist over fist, is not a significant distinction. Defendant distinguishes *Napier,* however, with the argument that their performance of the government contract was not under an assignment from Plaintiff but under a completely new agreement. Terminology notwithstanding,

the agreement between the government-obligee and the Defendant-surety was certainly not a contract of novation. The agreement not only fails to extinguish the obligee's and surety's rights with respect to the principal but also expressly references and preserves the suretyship arrangement with limited exception. (See e.g. Exhibit C ¶¶ 6 and 9, Pla.Supp.Brief # 38.)

The important point is that Defendant assumed no new risk under the takeover agreement either by operation of the indemnification agreement with Plaintiff, by Defendant's acknowledged right to be subrogated to the obligee in the event of loss incurred by the surety as a result of Plaintiff's default (*id.* at 3), or by the right to proceed against the obligee to recover all contract balances representing its damages and expenses incurred occasioned by the termination of the defaulted principal (*id.* at ¶ 6(b).) In short, Defendant remained completely indemnified against loss, although from all *appearances* Defendant undertook a new risk by contracting directly with the government. If a surety's bargain included profits while remaining indemnified against all loss, the result is a surety's windfall gain. The law of Kentucky accordingly forecloses a surety's right to profit on a new agreement with the obligee. *Napier* at 782–783, 136 S.W.2d 1083.

This Court would reach the same result even under principles of equity. Plaintiff paid Defendant a premium to guarantee performance, and whether Defendant made a good or bad bargain in hindsight does not change the outcome of this case. Had this Court defined the respective rights of the parties not under contract principles but under the doctrine of equitable subrogation as in *Maryland Casualty Co. v. Lincoln Bank & Trust Co.*, equity affords relief to a surety only "to the extent necessary to reimburse himself." 18 F.Supp. at 377. Authority involving different factual circumstances but related to this case is in accord. In *Fields v. Letcher State Bank*, 246 Ky. 229, 54 S.W.2d 910 (1932), the surety was able to recover only so much as was necessary to satisfy the amount paid as surety. In short, Defendant cites no authority for the proposition that a surety is entitled to any amount over and above its premium and loss incurred.

In this case, Defendant faithfully performed its required duties as surety without exposing itself to a risk beyond its bond. Due to its own expertise and good fortune, it will obtain complete reimbursement for *all* its costs and expenses related to that performance, plus it retains the premium. Query, what more could it ask for in equity?

Plaintiff may not have been so fortunate. It was terminated unfairly from its government contract and only received justice after several years litigation at the Board of Contract Appeals. Only a final accounting will determine whether Plaintiff made more or less "profit" in this contract than it originally projected. However, unlike Defendant, no one is reimbursing Plaintiff for his attorney's fees and the cost of time and energy its executives and owners expended to fight these legal battles. Query, under equity, is it any less deserving than Defendant?

A surety is a fiduciary of its principal. Just as a surety when called upon must carry out its performance in a manner that will not bring about harm to its principal, a surety may not likewise seize the circumstance of its principal to turn a profit over and above its bargain with the principal on the suretyship arrangement. The Court, therefore, concludes that the Order dated April 28, 1993 stands.

## ORDER

This matter is before the Court on Defendant's motion to reconsider. Having read the parties' memoranda and pertinent law and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion of Defendant is OVERRULED;

IT IS FURTHER ORDERED that Defendant shall have twenty (20) days in which to file a memorandum and proposed order setting forth an accounting of the net amount which it claims from the contract proceeds. Plaintiff shall have ten (10) days thereafter to respond. The parties are encouraged, however, to consult each other to resolve this

remaining financial dispute without the necessity of further involvement by this Court.