Tim **DAVIS** and Tim Davis & Associates, Inc., Appellants/Cross–Appellees,

v.

John J. **SCOTT** and Whitlow & Scott, Appellees/Cross–Appellants.

Nos. 2009–SC–000159–DG, 2009–SC–000391–DG.

Supreme Court of Kentucky.

Aug. 26, 2010.

Hans George Poppe, Jr., Warner Thomas Wheat, The Poppe Law Firm, Louisville, KY, Counsel for Appellants/Cross–Appellees.

Bethany A. Breetz, Matthew W. Breetz, Demetrius O. Holloway, Stites & Harbison, PLLC, Louisville, KY, Counsel for Appellees/Cross–Appellants.

Opinion of the Court by Justice CUNNINGHAM.

Appellant, Tim Davis, is the founder and president of Tim Davis & Associates, Inc. (collectively, "Davis"), a third-party health care benefits administrator. In 2002, Davis negotiated to purchase PICA Group Services, Inc., also a third-party administrator. The parties executed a binding letter of intent and a supplemental "non-solicitation" agreement. The non-solicitation agreement prohibited Davis from communicating with or soliciting PICA customers for a period of fifteen months in the event that the purchase did not occur.

Indeed, Davis's purchase of PICA did fall through. Shortly thereafter, PICA was purchased by Global Risk Management. Davis learned of Global's purchase in February 2003, when he received a letter from Coal Exclusive, a former client of PICA. In the letter, Coal Exclusive expressed an interest in becoming a client of Davis.

Because the fifteen-month period of the non-solicitation letter was still in effect, Davis contacted his attorney, John Scott, to discuss the enforceability of the agreement in light of Global's purchase of PICA. There is disagreement among Global, Davis, and Scott as to the exact nature of Scott's advice during the phone call, though all agree that Scott did not expressly advise Davis to cease communications with PICA's former clients. Even-

tually, Davis successfully solicited three former PICA clients.

In April of 2003, PICA notified Davis that he was in violation of the non-solicitation agreement. Davis forwarded the letter to Scott and later had a conversation about it, though neither remembers exactly what was discussed. Several months later, Global and PICA filed suit against Davis in the U.S. District Court for the Middle District of Tennessee, alleging a violation of the non-solicitation agreement.

The following year, as that case continued to proceed towards trial, Davis agreed to settle with Global. He met with Lee Henningsen, Global's president, to discuss the terms. According to Davis, Henningsen opined that Scott had given Davis incorrect advice and suggested Scott had violated the standard of care. Davis testified that he never thought Scott had been negligent prior to his conversation with Henningsen.

Eventually, a settlement was reached whereby Davis would pay Global $300,000. In addition, the agreement required Davis to pursue a legal malpractice claim against Scott and to assign 80% of the proceeds of that claim to Global. The pertinent provisions of the settlement agreement state:

d) TDA and/or Davis has provided written notice to Attorney John Scott ("Mr. Scott") of TDA and/or Davis's legal malpractice claims against Mr. Scott based on the advice that he gave TDA and/or Davis regarding the non-solicitation, non-communication and confidentiality agreement that TDA and Davis entered into with PICA Group Services, Inc. and/ or PICA, and which was an issue in the lawsuit. By execution of this Agreement, [Global] acknowledges receipt of a copy of the written notice provided by TDA and/or Davis;

e) In its discretion, [Global] will secure the services of an attorney ("Malpractice Counsel"), on behalf of TDA and/or Davis, to pursue TDA's and /or Davis's legal malpractice claim ("Malpractice Claim") against Mr. Scott. TDA and Davis agree that they will act in good faith to cooperate with and use their best efforts to assist Malpractice Counsel to successfully pursue the Malpractice Claim, and TDA and Davis agree that they will not settle the Malpractice Claim without the express written consent of [Global]. TDA and/or Davis further agree that they will enter into a common interest agreement, or other appropriate agreement under Kentucky Law, with [Global] and Malpractice Counsel that allows Malpractice Counsel to communicate with [Global] about the Malpractice Claim, including the sharing of attorney-client privileged information. Any money recovered from the Malpractice Claim will, after payment of attorney's fee and any litigation costs, be divided between [Global] and TDA and/or Davis, with 80% distributed to [Global] and 20% distributed to TDA and/or Davis. TDA's and Davis's commitment to use their best efforts to assist in the Malpractice Claim does not include any obligation to provide any financial assistance for the prosecution of the malpractice claim. Should [Global], for any reason, not secure the services of an attorney to pursue the Malpractice Claim, TDA and [Global] will be considered to have fulfilled their obligations under this Paragraph 1(e) of the Agreement.

The settlement agreement was executed in June of 2004 and approved by the U.S. District Court in Tennessee. In accordance with the agreement, the present action was initiated against Scott, in which Davis alleged malpractice and emotional distress. He sought to recover the $300,000 he paid to Global, attorneys' fees

and costs of both the federal litigation and the malpractice claim, and emotional distress damages. Discovery in the case was conducted for nearly two years.

In 2007, the trial court conducted oral arguments on Scott's motion for summary judgment and numerous motions *in limine*. Ultimately, the trial court determined that the settlement agreement constituted an improper assignment of a legal malpractice claim and was void as against public policy. It dismissed Davis's legal malpractice claim with prejudice on this basis. However, recognizing the novelty of the issue, the trial court ruled on several remaining issues, including motions to exclude expert witness testimony. Both parties appealed.

The Court of Appeals affirmed, agreeing that an improper assignment of a legal malpractice claim had occurred. The panel observed that "neither a legal malpractice claim nor the proceeds from such claim can be assigned to an adversary in the same litigation that gave rise to the alleged malpractice." Concerning the viability of Davis's malpractice claim, the Court of Appeals determined that the trial court is without jurisdiction to invalidate the settlement agreement and allow Davis to proceed because the settlement agreement is "a product of the federal litigation." As such, the Court of Appeals concluded that summary judgment and dismissal with prejudice was proper in this case, rendering all other issues discussed in the summary judgment order moot.

Both parties again appealed and discretionary review was granted by this Court. For the reasons set forth herein, we affirm in part and reverse in part.

### Standard of Review

On appeal from the granting of a motion for summary judgment, the appellate court must determine "whether the trial court

correctly found that there were no genuine issues of any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996); CR 56.03. In considering a motion for summary judgment, the trial court must consider the evidence in a light most favorable to the non-moving party. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Summary judgment is proper where the movant shows that the adverse party could not prevail under any circumstances. *Id.* Because summary judgment involves no fact finding, this Court will review the trial court's decision *de novo. 3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.,* 174 S.W.3d 440, 445 (Ky.2005).

### Assignment of Legal Malpractice Claim and its Proceeds

The primary issue in this matter is the purported assignment contained in the settlement agreement. Both parties acknowledge that Kentucky law prohibits the assignment of a legal malpractice claim. *Coffey v. Jefferson County Bd. of Educ.,* 756 S.W.2d 155 (Ky.App.1988). This rule is predicated upon the unique and highly personal nature of the attorney-client relationship. *See Associated Ins. Service, Inc. v. Garcia,* 307 S.W.3d 58, 63 (Ky.2010). Scott argues that such an assignment occurred here, and that the settlement agreement is therefore void as against public policy. Davis urges, however, that no such prohibited assignment occurred, and that, in fact, merely the proceeds of the malpractice claim were assigned.

"An assignment is made when the assignor intends to assign a present right, identifies the subject matter assigned, and divests itself of control over the subject matter assigned." 6 Am.Jur.2d *Assign-*

*ments* § 82 (2010). Here, the settlement agreement is clear that 80% of the proceeds of the malpractice claim against Scott are assigned to Global. The more complicated question is whether a *de facto* assignment of the entire malpractice claim itself has occurred.

■ "The creation and existence of an assignment is to be determined according to the intention of the parties, which is to be discerned not only from the instruments executed by them, if any, but from the surrounding circumstances." 6A C.J.S. *Assignments* § 57 (2010). Courts will look to substance, not form, to determine whether an assignment has occurred. 6 Am.Jur.2d *Assignments* § 83 (2010). *See also Power Grocery Co. v. Hinton,* 187 Ky. 171, 218 S.W. 1013, 1018 (1920). "No particular form is necessary to constitute an assignment...." *Napier v. Duff,* 281 Ky. 779, 136 S.W.2d 1083, 1085 (1939). *See also Patterson v. Miracle,* 253 Ky. 347, 69 S.W.2d 708, 710 (1934).

■ Both Davis and Global contend that it was their intention to assign merely the proceeds of the malpractice claim against Scott. The surrounding circumstances, however, belie this assertion. By the terms of the settlement agreement, Global selected and retained Davis's counsel in the malpractice action and bore the financial responsibility for the cost of suing Scott. Because Davis is obligated to bring the action, he may not withdraw the suit. Davis is not permitted to settle the malpractice claim without Global's express written consent. Davis agreed to share privileged, attorney-client information with Global. Global retained control over the initiation, continuation and/or dismissal of the malpractice claim.

The allocation of the proceeds of the malpractice suit is also troublesome. Because Global receives the lion's share of any judgment—80%—its interest far out-

weighs Davis's and renders Davis merely a nominal plaintiff. Also, under the assignment, Global receives a percentage of the damages awarded as opposed to a specified dollar amount. Therefore, its interest is not only in a successful claim, but a claim with the largest judgment possible. This is further indication of Global's ownership of the lawsuit.

This level of control over a lawsuit is consistent with an assignment of the entire cause of action, not merely the proceeds of the litigation. *See Greene v. Leasing Associates, Inc.,* 935 So.2d 21, 25 (Fla.Dist. Ct.App.2006) (noting that assignor "was not free to control the conduct of the litigation and to accept or reject any settlement offers," in determining that prohibited assignment of legal malpractice claim occurred). *See also Kim v. O'Sullivan,* 133 Wash.App. 557, 137 P.3d 61 (2006) (prohibited assignment of entire legal malpractice claim occurred where assignee retained complete control over litigation and potential settlement, in addition to entire proceeds of the malpractice claim). The terms of this settlement agreement essentially placed the control of the malpractice suit in Global's hands and rendered Davis's interest merely nominal. Though Global and Davis assert otherwise, what has occurred is an assignment not merely of the proceeds of the claim against Scott, but of the entire claim itself. Kentucky law does not permit an assignment of a legal malpractice claim.

### Effect of Improper Assignment

We now turn to the more difficult question in this case: what is the proper remedy? As both parties acknowledge, the general rule is that an invalid assignment has no effect on the validity of the underlying action. "[I]f an assignment is invalid or incomplete, the assignor may still maintain a suit in his or her name." 6 Am.

Jur.2d *Assignments* § 122 (2010). Thus, it would follow that Davis can pursue his malpractice claim as the real party in interest, as opposed to simply a nominal plaintiff. Indeed, several other jurisdictions considering similar circumstances have acknowledged that the underlying legal malpractice claim survives an invalid assignment. *See Weiss v. Leatherberry,* 863 So.2d 368, 373 (Fla.Dist.Ct.App.2003) (remanding matter to trial court because "invalidity of the agreement [to assign] has no effect on the underlying cause of action for legal malpractice"). *See also Botma v. Huser,* 202 Ariz. 14, 39 P.3d 538, 542 (2002); *Weston v. Dowty,* 163 Mich.App. 238, 414 N.W.2d 165, 167 (1987); *Tate v. Goins, et al.,* 24 S.W.3d 627, 635 (Tex.App. 2000).

However, while we agree that Davis has not forfeited his claim, we also cannot ignore the fact that the present suit was born of the invalid assignment and is, therefore, tainted in some respect. As stated by the Court of Appeals of Arizona, to allow Davis to proceed on the present claim would be "to wink at the rule against assignment of legal malpractice claims." *Botma,* 39 P.3d at 543. Moreover, this matter is complicated by the fact that the invalid assignment was made pursuant to a settlement agreement that has been approved by a federal district court.

The parties dispute the effect the settlement agreement has on the viability of the malpractice claim. Scott argues that the trial court is without jurisdiction to alter the agreement because it was approved by the federal district court and, therefore, may only be modified by that court. Davis argues that the agreement is void *ab initio* because the assignment is prohibited by Kentucky law.

■ We reject Davis's claim that the agreement is void. The assignment reflects only a portion of the overall agreement between Global and Davis. The invalidity of the assignment provision does not automatically void the entire agreement.

■ We cannot necessarily, however, accept Scott's assertion that the agreement may only be modified by the federal district court. It is unclear from the record before this Court whether the settlement agreement was made a part of the federal district court judgment, therefore, making it subject to that court's continued jurisdiction. At any rate, by its own terms, the agreement may only be modified with the approval of both Global and Davis.

We believe the most appropriate solution under these circumstances is to remand the matter to the circuit court with directions to dismiss Davis's complaint without prejudice. As stated above, though Davis has not forfeited his malpractice claim, the current suit, born of the improper assignment, cannot be permitted to continue. Should Davis wish to reassert his claim against Scott, he will be able to do so only upon a showing that the attempted assignment is no longer in place and that he is the real party in interest.

For the foregoing reasons, the opinion of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the Hardin Circuit Court for proceedings consistent with this opinion.

All sitting. All concur.